UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **3:05-CR-98-001** |
| ) | |
| **PATRICIO BAUTISTA,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM, OPINION & ORDER**

This matter is before the Court on the Motion for Judgment of Acquittal (Docket No. 57) and Motion for New Trial (Docket No. 58) filed by the Defendant, Patricio Bautista ("Bautista"), on December 27, 2005.  For the reasons set forth below, both motions are **DENIED**.

**I.  BACKGROUND**

On August 18, 2005, Bautista was charged in Count One (1) of a one-count Complaint filed by the U.S. Attorney's Office for the Northern District of Indiana.[1]  A two-count Indictment was returned by a grand jury in this District on September 15, 2005.  Count 1 of the Indictment charged Bautista with violations of 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute in Excess of 1,000 Marijuana Plants, and 18 U.S.C. § 2, Aiding and Abetting.  Count 2 of the Indictment charged Bautista with

---

[1] The Complaint charged Bautista with violations of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute in Excess of 1,000 Marijuana Plants, and 18 U.S.C. § 2, Aiding and Abetting.

violations of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute in Excess of 1,000 Marijuana Plants, and 18 U.S.C. § 2, Aiding and Abetting. Bautista proceeded to a jury trial which commenced on December 19, 2005. The Court dismissed Count 1 of the Indictment, and on December 20, 2005, the jury returned a verdict of guilty on Count 2.

## II.  ANALYSIS

The Defendant's Motions allege that he should be acquitted on all counts or, in the alternative, be granted a new trial based on alleged errors both before and at trial. Bautista contends that he is entitled to a judgment of acquittal because there was insufficient evidence to prove beyond a reasonable doubt that he possessed in excess of 1,000 marijuana plants. Alternatively, Bautista contends that he is entitled to a new trial because of errors committed in this case including, but not limited to, the following: 1) the trial court should have granted Defendant's motion to quash arrest and suppress statements; 2) the trial court improperly limited Defendant's cross-examination of Indiana State Trooper Jason Sample ("Trooper Sample") regarding racial bias he had towards Defendant prior to his arrest; and 3) the trial court should not have given an instruction with the Sentencing Guidelines' definition of a marijuana plant. The government maintains that Bautista's motions should be denied because: 1) sufficient evidence was presented from which a jury could find Bautista's guilt beyond a reasonable doubt; and 2) Bautista's case is not one of the "exceptional cases" in which the evidence preponderates so heavily against the verdict that it would be an injustice to

2

let the jury's verdict stand.  Government's Opposition at 1 and 3.

A.  <u>Standards of Review</u>

Under Federal Rule of Criminal Procedure 29 ("Rule 29"), a court may acquit a defendant of "one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."  In considering a motion for judgment of acquittal under Rule 29, the court must view all evidence in the light most favorable to the government and must not weigh the credibility of witnesses.  *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999).  It is the "exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences."  *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989); *see also United States v. Bond*, 231 F.3d 1075, 1076 (7th Cir. 2000).  The movant "faces a nearly insurmountable hurdle [because courts] consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt."  *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999)(quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997).  *See also United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir. 1978) (holding that a motion for judgment of acquittal "must be granted when the evidence . . . is so scant that the jury could only speculate as to the defendant's guilt, and is such that a reasonably-minded

jury *must* have a reasonable doubt as to the defendant's guilt."(emphasis in original)). Simply stated, the court must determine whether, under this standard, the evidence is sufficient to support a finding of guilt beyond a reasonable doubt. *United States v. Beck*, 615 F.2d 441, 447-48 (7th Cir. 1980); *United States v. Williams*, 311 F.2d 721, 723 (7th Cir. 1963); *Curley v. United States*, 160 F.2d 229, 232 (7th Cir. 1947).

     A different standard must be applied in ruling on a motion for a new trial under Federal Rule of Evidence 33 ("Rule 33") than for a motion for judgment of acquittal under Rule 29. Under Rule 33, the court may grant a new trial "if the interest of justice so require." The power of the court is much broader when ruling on a motion for a new trial in that the court may consider the credibility of witnesses and weigh the evidence, and the court is not required to view the evidence in the light most favorable to the government. *Washington*, 184 F.3d at 657. The verdict may be set aside and a new trial granted if the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted. *United States v. Ahern*, 761 F.Supp. 1382, 1382-83 (S.D. Ind. 1991). "A motion for a new trial is not favored and should only be granted with great caution." *United States v. Campos*, No. 04-CR-156, slip op. at 1 (7th Cir. June 27, 2006).

     When dealing with motions under Rules 29 and 33, the movant bears the responsibility of "develop[ing] his arguments and present[ing] the court with adequate grounds and authority to grant the relief requested." *United States v. Ervin*, No. 2:00-

4

CR-28-TS, slip op. at 2 (N.D. Ind. July 26, 2005).  "Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."  *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).  This Court does not bear the obligation of "research[ing] and construct[ing] the legal arguments open to the parties, especially when they are represented by counsel."  *Beard v. Whitley County REMC*, 840 F.2d 405, 408-09 (7th Cir. 1988).

B.  <u>Motion for Judgment of Acquittal</u>

The Defendant argues that the government failed to meet the burden of proof necessary to prove Bautista's guilt on Count 2.  In his motion, the Defendant states that the "jury fixed the amount of plants at 2,687" and that, "[a]t the trial, a video was introduced into evidence that showed the method that the plants were retrieved an counted."  Bautista's Mot. J. Acquittal at 1.  Orally, but not in any written brief, the Defendant has argued that the method of counting the marijuana plants was flawed in that some "plants" were counted more than one time depending on their root structures.  Beyond those statements, the Defendant fails to present any argument or authority to support his contention that the evidence was insufficient to prove his guilt of more than 1,000 plants.[2]

---

[2] On January 18, 2006, this Court held oral arguments in South Bend, Indiana on Bautista's Motion for Judgment of Acquittal and Motion for New Trial.  The Defendant was given until February 21, 2006 to file a Supplemental Response Brief, and the government was given until February 28, 2006 to file a Supplemental Reply Brief.  As of July 28, 2006, no additional filings on either of these motions

5

The government has adduced extensive evidence that the Defendant was guilty of possession of marijuana with intent to distribute in an amount in excess of 1,000 plants. Over the course of the two day trial, the jury was presented with evidence of Bautista's involvement in the marijuana grow operation. A video was introduced into evidence that showed the method used by law enforcement officials to retrieve and count the marijuana plants. Bautista's Mot. J. Acquittal, at ¶ 3-5. Additionally, Trooper Sample testified as to the method of retrieving and counting the plants and stated that the troopers recovered 2,687 plants. Prelim. Invest. and Det. Hearing Trans. at 5: 20-24. Finally, this Court gave the jury a special interrogatory in which the jury had to determine the exact number of marijuana plants that Bautista possessed. The jury returned that interrogatory, indicating that Bautista was guilty of possessing 2,687 marijuana plants. Jury Verdict (Docket No. 56) at 2.

Bautista's conclusory allegation that the government's evidence–namely the video introduced and shown at trial–was insufficient to support the jury's guilty verdict fails to meet the "very high burden" required under a Rule 29 motion. *United States v. Muskovsky*, 863 F.2d 1319, 1322 (7th Cir. 1988). Merely listing allegations, without more, is not enough. The record here, viewed in the light most favorable to the Government, contains evidence from which the jury could find the Defendant guilty of the crime charged in the Indictment beyond a reasonable doubt. Therefore, Bautista's

---

have been received from either party.

motion for acquittal is **DENIED**.  Accordingly, this Court **DENIES** his request that this Court convict him of the lesser included offense of possession of marijuana with intent to distribute in an amount less than one-thousand (1000) plants.

C.  Motion for New Trial

The Defendant argues that, even if the Court denies his Motion for Judgment of Acquittal, the Court should order a new trial in the interests of justice.  Bautista argues that he is entitled to a new trial on three grounds:  1) the trial court should have granted Defendant's motion to quash arrest and suppress statements; 2) the trial court improperly limited Defendant's cross-examination of Trooper Sample regarding racial bias towards the Defendant prior to his arrest; and 3) the trial court should not have given an instruction with the Sentencing Guidelines' definition of a marijuana plant.  Bautista does not elaborate on these contentions and provides no authority or argument in support of his contentions.  This Court does not bear the obligation of "research[ing] and construct[ing] the legal arguments open to the parties, especially when they are represented by counsel."  *Beard v. Whitley County REMC*, 840 F.2d 405, 408-09 (7th Cir. 1988).  Nevertheless, in the interest of thoroughness, each of these arguments will be addressed in turn.

1. Defendant's Motion to Quash Arrest and Suppress Statements

Bautista asserts that the "interests of justice demand a new trial because: a) the trial court should have granted defendant's motion to quash arrest and suppress

7

statements." Defendant's Motion for New Trial at 1. The government relied on the arguments it made during the suppression hearing. In its Opposition to Bautista's Motion for New Trial (Docket No. 59), the government stated, "[n]o additional relevant information was adduced at trial which would change the Court's ruling on this issue." Government's Opp. at 4.

This Court has reviewed the Defendant's Motion to Quash Arrest and Suppress Statements (Docket No. 27), the government's Response to that motion (Docket No. 31), the government's Supplemental Response (Docket No. 34), and the Defendant's Memorandum of Law in Support of his Motion (Docket No. 35). After evidentiary hearings before both Magistrate Judge Nuechterlein and this Court, the Defendant's Motion was ultimately denied. This Court has reviewed the transcripts of both hearings, and no additional evidence was presented at trial.

The facts leading up to Bautista's arrest are largely undisputed. On July 29, 2005, Indiana State Police initiated surveillance on a marijuana plot located on the Brownlee farm in the area of 6357 E. 100 S., Mill Creek Indiana. Motion to Quash at 1; Suppression Hearing Transcript at 6: 6-9; 11: 5-17. Video surveillance recorded activity on the plot for nearly two and one-half weeks. On August 16, 2006, three Hispanic men were observed working in the field. Around 3:30 p.m. on the same day, a black pickup truck with Illinois license plates was seen driving north on a farm lane away from the marijuana plot and to the Brownlee residence listed above. Motion to Quash at 1;

8

Suppression Hearing Transcript at 11: 12-17. Trooper Sample testified that he parked his unmarked police car at the intersection of Taylor Road and County 100 South "to keep a watch on the vehicle [the black truck] at the residence." Suppression Hearing Transcript at 12: 14-15. He stated that approximately an hour and a half after parking there, "[a] tan SUV pulled up next to me, coming east on County Road 100 South. Stopped. Rolled down his window and asked what I was doing." *Id.* at p. 13, ll. 16-18. Wayne Brownlee ("Brownlee") was the driver of the vehicle, and Bautista was riding in the front passenger seat. Trooper Sample got out of his vehicle and approached the tan SUV. *Id.* at 14: 6-8. He asked the passenger if he had any identification on him and was handed an Illinois ID in the name of Patricio Bautista. Motion to Quash at 1; Suppression Hearing Transcript at 14: 10-13. Trooper Sample testified that he asked Bautista if he was the driver of the black pickup truck; the Defendant responded that he had driven the black truck earlier. Motion to Quash at 1; Suppression Hearing Transcript at 14: 12-13. Trooper Sample asked Bautista to step out of the SUV, and Brownlee was allowed to leave. Trooper Sample testified that, at that point, the Defendant was not in custody and that he was free to leave. Suppression Hearing Transcript at 15: 1-3. Trooper Sample asked Bautista whether "he drove the black truck down the farm lane" and whether anyone was with him. *Id.* at 15: 5-7. Trooper Sample stated that Bautista responded affirmatively and stated that, around 3 p.m., he "dropped off two individuals at the end of the lane to pick corn." *Id.* at 15: 6-10. Trooper Sample also asked the

9

Defendant if he knew who the black truck belonged to, and Bautista replied that the truck belonged to Ernesto Hernandez, one of the individuals he dropped off down the farm lane. *Id.* at 15: 16 and 21-22.  Finally, Trooper Sample testified that Bautista stated that he worked for Gordon Brownlee and that he was in the area to mow his grass.  *Id.* at 15: 25 and 16: 1-2.  Sometime thereafter, Trooper Sample was notified by Senior Trooper Larsh that the three suspects under surveillance were fleeing the marijuana plot.  At that point, Trooper Sample placed Bautista under arrest, handcuffed him, and placed him in his car.  *Id.* at. 34: 17-20.  Prior to his arrest, Bautista was not advised of his *Miranda* rights.  Suppression Hearing Transcript at 28: 20-24.

In his Motion to Quash Arrest and Suppress Statements, the Defendant contends that "all the statements obtained from the defendant should be suppressed because he was arrested without probable cause and asked questions that were specifically designed to elicit incriminating responses, and no prior *Miranda* warnings had been issued."  Motion to Quash at 2.  He went on to argue that the stop of the vehicle lacked a "reasonable or articulable suspicion that defendant was engaged in any illegal activity."  *Id*.  The Defendant relied on *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1966), *Berkemer v. McCarty*, 468 U.S. 408, 104 S.Ct. 3138 (1985), and *Terry v. Ohio*, 391 U.S. 1, 88 S.Ct. 1868 (1968), to support his contentions.  The Defendant argues that, to hold Bautista accountable for the marijuana plot, Trooper Sample "had to connect defendant to the black truck.  As such, he immediately asked the only question he could, other than

10

"Is that your marijuana field?" to achieve the desired result; "were you driving that black truck earlier?" Motion to Quash at 3. The Defendant argues that the Defendant was "in custody for *Miranda* purposes when he was removed from Wayne Brownlee's SUV, and then he was interrogated." Defendant's Memorandum of Law in Support (Docket No. 35) at 1. According to the Defendant, Trooper Sample's questions were the functional equivalent of express questioning and were questions reasonably likely to elicit an incriminating response from Bautista. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1683 (1980). Accordingly, the Defendant argues that the responses given to Trooper Sample's questioning and subsequent statements by Bautista should be suppressed.

The government asserts that Trooper Sample did not "stop" the tan SUV, but rather that Brownlee "stopped the SUV to ask Tpr. Sample about what was going on." Government's Response (Docket No. 31) at 2. The government contends that, because there was no "stop," the reasonable suspicion requirements of *Terry* do not apply. The government also argues that *Miranda* warnings were not required because Bautista was neither "in custody" nor was he restrained in any way when he was a passenger in Brownlee's SUV or when he was asked to step out of the vehicle. *Id*. at 3; *See also* Government's Supplemental Response at 2. Finally, the government asserts that no new evidence was presented at trial which would change the Court's earlier ruling. As such, the government requests that this Court deny Bautista's request for a new trial on this ground.

This Court is satisfied that this was not an encounter of the type to trigger *Terry*. In his Motion to Quash Arrest and Suppress Statements, the Defendant states, "At around 7 p.m., the *police stopped* a tan SUV at an intersection near the residence." Docket No. 27 at ¶ 5 (emphasis added). At the Suppression Hearing, the Defendant's attorney, Mr. Himel ("Himel"), questioned Trooper Sample about confronting the SUV. Trooper Sample corrected Himel, stating "[t]he tan SUV stopped at my location." Suppression Hearing Transcript at 23: 1. Himel apologized, noting that the driver of the tan SUV actually approached Trooper Sample rather than Trooper Sample conducting a traffic stop of the vehicle. Therefore, any argument regarding whether Trooper Sample "stopped" the tan SUV has been laid to rest.

This Court is convinced that there was probable cause to justify Bautista's arrest and that Bautista's voluntary statements made prior to his arrest were properly obtained. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle*, 540 U.S. 336, 371 (2003). Here, Brownlee and Bautista approached Trooper Sample and questioned him about what was going on in the area; Trooper Sample did not conduct a traffic stop. Upon Trooper Sample's request for the Defendant's identification, Bautista produced an Illinois identification card. Trooper Sample had prior knowledge–through earlier, on-going surveillance–that a black pickup truck bearing Illinois license plates had been seen leaving the area of the marijuana plot and driving north to the Brownlee

12

residence, where the truck was then parked.  Trooper Sample simply asked Bautista if he had driven the black truck earlier, and Bautista responded affirmatively.  Bautista's statements were given at a time when he was not under arrest and at liberty to leave.  No new evidence was adduced at trial to sway this Court's original judgment on this issue.  Bautista's motion for a new trial based on this Court's refusal to grant defendant's motion to quash arrest and suppress statements is **DENIED**.

2.  Cross-Examination of Trooper Sample

Bautista seemingly contends that the Court prevented him from obtaining a fair trial when it limited his cross-examination of Trooper Sample.  Due to the Defendant's lack of elaboration, this Court is left to infer he was prevented from obtaining a fair trial because he was impeded from demonstrating Trooper Sample's bias towards him, thus preventing the exercise of his Sixth Amendment right to confront his accuser.

The government responded by stating that the Defendant's contention misstates the record because "[n]o evidence was ever introduced that Trooper Sample had 'racial bias' against the Defendant.  Government's Opp. at 4.  The government stated, "[a]ll Trooper Sample has stated, during the suppression hearing, was that because Hispanic men had been filmed working in the plot, he expected that another Hispanic man might be working with them."  *Id.*  The government contends that this does not "constitute racial bias, but simply a logical inference based on a factual observation."  *Id*.

Cross examination is one of the primary means utilized to ascertain the truth and,

13

accordingly, the right to cross examine is a fundamental part of a fair trial.  *See Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038 (1972).  However, the right to cross examine is not unlimited.  Federal Rule of Evidence 611(b) provides that cross-examination of witnesses is limited to matters raised on direct examination or bearing on the credibility of witnesses.  The court has wide discretion to "permit inquiry into additional matters as if on direct examination." *Id*.; *see also United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir. 1987) (stating that the court's discretion "continues to exist even though the questioning so limited is designed to elicit evidence of witness bias pursuant to the defendant's confrontation clause rights).  In *Delaware v. Van Arsell*, the Supreme Court stated, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant."  475 U.S. 673, 106 S.Ct. 1431, 1435 (1986).  The concern on appeal is whether the "jury had sufficient information to make a discriminating appraisal of the witness's bias or motive."  *United States v. Hinton*, 683 F.2d 195, 200, *affirmed on other grounds sub nom*.

Here, Bautista makes no showing that this Court abused its discretion in limiting the cross-examination of Trooper Sample.  Through both evidence and argument, the Defendant had a Constitutionally sufficient opportunity to present his theory of witness

14

bias to the jury. Thus, this Court did not improperly limit Bautista's cross-examination of Trooper Sample. Bautista's motion for a new trial based on improperly limited cross-examination is hereby **DENIED**.

3.  Jury Instruction Regarding the Definition of a Marijuana Plant

Bautista asserts that this Court should not have given an instruction including the Sentencing Guidelines' definition of a marijuana plant. This Court infers from his lack of elaboration that the Defendant contends that this jury instruction was an inaccurate statement of the law and inapplicable to the facts of this case.

The government stated that the "definition from the sentencing guidelines is the only definition of what constitutes a marijuana plant in case law, statutes, or otherwise. Given the dispute at trial over the number of marijuana plants, the instruction was not only correct, but it was helpful to the jury." Government's Opp. at 5.

This Court finds that the Defendant's vague and undeveloped objection to this jury instruction is without merit. In fact, the Defendant does not even identify the instruction to which it objects by number in his Motion for New Trial. This Court infers that the Defendant objects to the inclusion of Court's Instruction No. 16, which reads:

> You are instructed that marijuana is a controlled substance.
>
> A marijuana "plant" is an organism having leaves and a readily observable root formation (e.g., a marijuana cutting having roots, a rootball, or root hairs is a marijuana plant).

Bautista's claim is general and does not specify grounds regarding the jury instruction or

15

Sixth Amendment rights.  At any rate, this instruction is undoubtedly proper because the jury was asked by the Court to calculate the precise number of marijuana plants in this Defendant's possession.  The jury needed to know the precise definition of a marijuana plant in order to make this determination.  Based on the vagueness of Defendant's objection and ultimate necessity of the instruction, a new trial is not warranted because the Defendant has failed to demonstrate that his substantial rights have been jeopardized. *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).  Therefore, Bautista's motion for a new trial based on faulty jury instructions is **DENIED**.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal (Docket No. 57) is **DENIED**.  Defendant's Motion for New Trial (Docket No. 58) is also **DENIED**.

**SO ORDERED.**

**DATED: July 26, 2006**

　　　　　　　　　　　　　　　　　　　　　　　　**S/ ALLEN SHARP**
　　　　　　　　　　　　　　　　　　　　　　　　**ALLEN SHARP, JUDGE**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**